UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERNICIOUS CRAIG,

          Petitioner,

     v.                                Civil Action No. 2:10-cv-12620
                                              Honorable George Caram Steeh

STEVE RIVARD,

          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING PERMISSION FOR AN APPLICATION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

This is a habeas case filed by a state prisoner under 28 U.S.C. § 2254. Petitioner Pernicious Craig is incarcerated by the Michigan Department of Corrections, currently at the Central Michigan Correctional Facility in St. Louis, Michigan, where he is serving two concurrent prison terms of six to twenty-two years, six months, for two counts of second-degree criminal sexual conduct (CSC II). Craig's convictions occurred on September 7, 2007, following a jury trial in the Circuit Court in Oakland County, Michigan. He was sentenced on September 21, 2007, as a habitual offender, second offense. Craig filed this habeas petition on July 1, 2010, alleging that his convictions and sentences are unconstitutional because he was denied his right to confrontation and to present a defense, the trial court erred in denying his motion for a directed verdict, trial counsel was ineffective for failing to call two alibi witnesses, and the prosecutor committed misconduct when she made improper comments during closing arguments.

-1-

For the reasons stated, the Court finds that Craig's convictions and sentences are constitutional, and therefore, the Court will deny the petition. The Court also will decline to issue Craig a certificate of appealability but will grant him permission for an application to proceed *in forma pauperis* on appeal, should he wish to file an appeal from the Court's decision.

## I.  BACKGROUND

Craig's troubles in this case arise because of allegations of inappropriate sexual touching of the Complainant A.W.,[1] which occurred in May 2002. A.W. was eleven-years-old at the time of the incident. She was seventeen-years-old at the time of Craig's trial. The Court finds the following trial testimony pertinent to the case.

A.W. testified that Craig was her grandfather's nephew. He lived with her family when she was about ten or eleven. His bedroom was across the hall from her bedroom, which she shared with her sister. One morning, while she pretended to be asleep, Craig came into her room, lifted up her bra, and began sucking on her breasts. He also pulled down her pants and rubbed her vagina with his hand. He then pulled down his pants, and, when she stirred, he ran out of her room, swearing. She said she was pretending to be asleep to see how far he would go, "if he had the heart to actually have sex with an eleven[-]year[-]old." Trial Tr. vol. II, 131 Sept. 5, 2007. A.W. first told her social worker Kim Dehaven about the incident, about a year before Craig's trial. She did not tell anyone in her family because she did not want him to go to jail.

Sara Robinson, A.W.'s sister, also testified. Robinson and A.W. share the same mother. Robinson said she knew Craig for about seven years. When the prosecutor began to ask her if she

_____

[1]Because of the sensitivity of the subject and the Complainant's age, her initials will be used throughout the opinion in order to protect her identity.

had any problems with Craig, and, as she began recounting an incident, defense counsel objected. Defense counsel stated that it appeared like she was about to testify to other-acts evidence that had not been disclosed to the defense. He moved for a mistrial, which the trial court denied.

Amy Allen, a social worker and forensic interviewer employed by the Child Abuse and Neglect Counsel (CARE house) in Oakland County, was qualified as an expert in forensic interviewing. Allen did not interview A.W., but had reviewed the notes from the interview that was taken at the CARE house. She testified as to the characteristics of children who have been sexually abused. She said some children feel they will be disbelieved and others blame themselves for their victimization. It is not uncommon for children to delay disclosure. When children know their offenders, they may love the person but hate and fear the action. When there is delayed disclosure, it is not unusual for the child to be unclear on the time frames of when the abuse occurred. During cross-examination, the trial judge restricted the questions that defense counsel could ask Allen about the report done by someone else, which included the names of three different alleged perpetrators. The report would have been admitted if defense counsel redacted the report, but defense counsel stated that he did not want to use a redacted report.

Kim Dehaven testified and corroborated A.W.'s testimony that she told her about the incident about a year before the trial. After their conversation, Dehaven referred her to protective services for an investigation. She took her to the CARE house interview.

After the prosecution rested, defense counsel motioned the trial court for a directed verdict, which the court denied. The defense then called Shannon Thompson, Craig's sister-in-law, to testify as an alibi witness.

-3-

Thompson testified that she went to Arkansas in May of 2001 and Craig was there.  She also went to Arkansas in June of 2001 for three weeks and he was there again.  She acknowledged that she first came forward with that information about one week before trial.

The defense rested.  After closing arguments, the trial court instructed the jury, without objection from either the prosecution or the defense.

The jury convicted Craig as charged.  He was sentenced as described.

Following his sentencing, Craig, through counsel, filed a direct appeal with the Court of Appeals, raising a claim concerning his rights under the Confrontation Clause and to present a defense.  Craig also filed a *pro per* supplemental brief raising claims concerning the trial court's denial of his motion for a directed verdict, the effectiveness of trial counsel, and the prosecutor's conduct during rebuttal.  The Court of Appeals affirmed his convictions and sentences.  *People v. Craig*, No. 281383, 2009 WL 562989, at *1, 3 (Mich. Ct. App. Mar. 5, 2009).  On September 11, 2009, the Michigan Supreme Court denied his application for leave to appeal the March 5, 2009 judgment of the Court of Appeals and his motion to remand.  *People v. Craig*, 485 Mich. 864, 771 N.W.2d 759 (2009) (Table).

Craig neither filed a petition for a writ of certiorari with the United States Supreme Court nor a motion for relief from judgment with the state trial court.  Rather, he filed this habeas action raising the same claims raised in the state appellate courts.  Respondent, through the State Attorney General, argues in his answer to the petition that the claims are either procedurally defaulted or meritless.

-4-

## II.  STANDARD OF REVIEW

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d) (1)-(2); *Parker v. Matthews*, __ U.S. __, __, 132 S.Ct. 2148, 2151 (2012).  Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas-corpus relief under the "unreasonable application" clause of section 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The Supreme Court has continued to emphasize the limited nature of this Court's review of habeas-corpus petitions. In its unanimous decision in *Harrington v. Richter*, 562 U.S. __, 131 S.Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, 562 U.S. at __, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* Court suggested that *Harrington* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than de novo review. *Renico v. Lett*, 559 U.S. __, __, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks and citation omitted)). The "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, [], and demands that state-court decisions be given the benefit of the doubt." *Id.* (internal quotation marks and citations omitted)). Additionally, the Supreme Court has held that habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. __, __, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Craig's claims.

### III.  DISCUSSION

#### A.  Claim I–Denied Right to Confrontation and to Present a Defense

In his first habeas claim, Craig argues that he was denied the right to confrontation and to present a defense when the trial court determined that the CARE house report, which was prepared after A.W.'s interview, was inadmissible. The report identified other men as offenders and Craig alleges that the evidence was admissible for the purpose of showing that A.W.'s age-inappropriate sexual knowledge came from another source other than himself.

First, to the extent that Craig argues that the application of Michigan's Rape Shield Statute was inappropriately applied, his claim is noncognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Wilson v. Corcoran*, 562 U.S. __, __, 131 S.Ct. 13, 16 (2010) ("we have repeatedly held that federal habeas corpus relief does not lie for errors of state law") (citations and internal quotations omitted). A state-court evidentiary ruling may form the basis for habeas relief only if it were so fundamentally unfair as to violate a petitioner's due-process rights.

-7-

*See Swarthout v. Cooke*, __ U.S. __, __, 131 S.Ct. 859, 861 (2011) (citing *Estelle*, 502 U.S. at 67);

*see also Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (state-court evidentiary rulings

cannot rise to the level of due-process violations unless they "offend[ ] some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental." ) (citations

omitted).

Second, to the extent that Craig argues constitutional violations, that he was denied his right

to confrontation and to present a defense as a result of the exclusion, the Court finds that those

claims lack merit. The Court of Appeals addressed, and rejected, this claim, stating:

> [T]he victim in this case was 15 or 16 years old when she first reported the assault.
> There was no intimation at trial that the victim had age-inappropriate sexual
> knowledge. In addition, defendant failed to show how the evidence would have been
> relevant to show bias or how it was probative of the victim's ulterior motive for
> making the accusation. Finally, so much time took place between when the incident
> occurred and when it was reported that the "offenders" in the report could have
> referred to sexual conduct that took place at a time other than, including a time after,
> the incident. Defendant failed to establish how the Care House report's reference to
> other offenders was relevant to his case.

*Craig*, 2009 WL 562989, at *1.

The Sixth Amendment guarantees a defendant the right to be confronted with the witnesses

against him. U.S. Const. amend. VI. The Confrontation Clause protects a defendant's literal right

to confront witnesses at the time of trial, and a defendant's right to cross-examination. *Delaware*

*v. Fensterer*, 474 U.S. 15, 18 (1985). A trial court has the discretion to limit the scope of

cross-examination. *Delaware v. VanArsdall*, 475 U.S. 673, 675 (1986). This includes discretion

to impose limits based on concerns about harassment, prejudice, confusion on the issues, witness

safety, or interrogation that is repetitive or only marginally relevant. *VanArsdall*, 475 U.S. at 675;

*King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999). The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might desire. *Fensterer*, 474 U.S. at 20; *Haliym v. Mitchell*, 492 F.3d 680, 701 (6th Cir. 2007).

Like the right to confrontation, the Supreme Court repeatedly has recognized that the right to present a defense also is subject to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) (addressing the exclusion of exculpatory polygraph test result); *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the Sixth Amendment does not confer on the accused an "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (addressing criminal defendants' rights to testify in their own behalf); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (addressing the defendant's right to present and cross-examine witnesses in his own defense).

> "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Scheffer*, 523 U.S. at 308 (internal citations omitted). When inquiring into the constitutionality of a trial court's decision to exclude evidence, a habeas court must consider the relevancy and cumulative nature of the excluded evidence, and the extent to which it was "indispensable" to the defense. *Crane v. Kentucky*, 476 U.S. 683, 691 (1986). Against this, courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based. *Id.*

In *Michigan v. Lucas*, 500 U.S. 145, 150 (1991), the Supreme Court recognized that Michigan's Rape Shield Statute represents a valid legislative determination that rape victims deserve

-9-

heightened protection from harassment. Under that Statute, evidence of an alleged rape victims' sexual conduct is inadmissible unless it relates to past conduct with the defendant or shows the origin of physical evidence. MCL 750.520j.

In this case, the evidence Craig wanted admitted at trial was not subject to either exception under Michigan's Rape Shield Statute. Having reviewed the transcript, this Court finds that Craig had many opportunities to present evidence regarding A.W. He had sufficient opportunity to question her at length about the incident and her recollection of events. He was allowed to cross-examine her and challenge the truthfulness of her testimony. He also had a meaningful opportunity to present defense witnesses of his own.

Hence, with respect to this claim, the Court finds that Craig has failed to establish that the trial court's ruling violated his right to confrontation or to present a defense or otherwise rendered his trial fundamentally unfair. Therefore, the Court of Appeals's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted.

However, even if the Court were to find the Court of Appeals's resolution of this claim unreasonable, the Court would find that the error was harmless. Alleged Confrontation-Clause violations and the right to present a defense are subject to harmless-error analysis. *Van Arsdall*, 475 U.S. at 681-84 (discussing the Confrontation Clause and harmless-error standard); *Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009) (discussing right to present a defense and harmless-error standard). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *see also Vasquez*

-10-

*v. Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007). Under this standard, habeas relief cannot be granted unless the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. Here, given the overwhelming evidence of Craig's guilt, the Court would conclude that any error was harmless.

### B.  Claim II–Trial Court Error in Denying Motion for a Directed Verdict

In his second habeas claim, Craig asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a directed verdict. Craig argues that the evidence was insufficient, but he does so only in reference to the trial court's decision denying his motion for a directed verdict; defense counsel asked that the charges be dismissed because the Complainant's testimony was inconsistent. Craig also relatedly alleges that there was insufficient evidence to support his convictions for CSC II.

The Court of Appeals addressed and denied this claim, finding that, because the motion was based solely on the credibility of the Complainant's testimony, the motion was properly denied. The Court of Appeals concluded that it was the province of the jury to decide whether A.W.'s testimony was believable.

To the extent that Craig relies upon state law to assert that he was entitled to a directed verdict on the CSC II charge, he fails to state a claim for habeas relief. As stated, it is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle*, 502 U.S. at 67-68 ; *see also Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990). Here, Craig's claim that the trial court erred when it denied his motion for a directed verdict is a matter of state law regarding the weight of the evidence, not its sufficiency, and is therefore noncognizable in a habeas petition.

-11-

Additionally, to the extent that Craig alleges that the evidence was insufficient to support his convictions under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court finds that his claim lacks merit.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original and citation omitted). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Jackson*, 443 U.S. at 324 n.16 (citations omitted); *see also Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (same).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review–the factfinder at trial and the state court on appellate review–as long as those determinations are reasonable. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (same). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact

-12-

resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, __, 130 S.Ct. 665, 673 (2010) (citations omitted). Accordingly, "[t]he mere existence of sufficient evidence to convict [] defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89. The Court does not need to be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995). In fact, the AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts. *Renico*, 559 U.S. at ---, 130 S.Ct. at 1866.

In Michigan, a conviction for CSC II requires that a person engage in sexual contact with another person and that person is under thirteen years of age. MCL 750.520c(1)(a); *People v. Piper*, 223 Mich. App. 642, 645, 567 N.W.2d 483, 485 (1997). Sexual contact is the "intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that touching can reasonable be construed as being for the purpose of sexual arousal or gratification." *Id.* (citation omitted).

In this case, there is no dispute that the Complainant was under thirteen at the time of the incident. She testified that Craig came into her room, lifted up her bra, and put his mouth on her breast. He pulled down her pants and rubbed her vagina. He then pulled down his pants but ran out of room when she stirred.

With that testimony only, when viewed in the light most favorable to the prosecution, a rational trier of fact could have concluded that there was sufficient evidence to convict Craig of CSC II. Although the trial was a credibility contest and the facts may have been susceptible to a different interpretation, under the *Jackson* standard, this Court does not re-weigh the evidence, re-evaluate

-13-

the credibility of witnesses, or substitute its judgment for that of the trier of fact. *Coleman v. Johnson*, __ U.S. __, __, 132 S.Ct. 2060, 2062 (2012); *see also Cavazos v. Smith*, 565 U.S. 1, __, 132 S.Ct. 2, 4 (2011) (same); *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (quoting *Brown*, 567 F.3d at 205). Moreover, in Michigan, "[t]he testimony of a victim need not be corroborated." MCL 750.520h.

Against that backdrop, the Court concludes that Craig is not entitled to habeas relief with respect to this claim.

### C. Claim III–Ineffective Assistance of Counsel

In his third habeas claim, Craig alleges that he was denied the effective assistance of trial counsel because trial counsel failed to call two additional alibi witnesses who would have testified that he was not in Michigan at the time of the incident. Craig's sole alibi witness was Thompson, who testified that he was in Arkansas when she visited on two separate occasions in 2001. The Michigan Court of Appeals addressed this issue and found that counsel was not ineffective.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) governs claims of ineffective assistance of counsel. To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his or her attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and

-14-

instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Recently, in *Harrington*, the United States Supreme Court stated:

"Surmounting *Strickland's* high bar is never an easy task." An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under [section] 2254(d) is all the more difficult. The standards created by *Strickland* and [section] 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under [section] 2254(d). When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

-15-

*Harrington*, 562 U.S. at __, 131 S.Ct. at 788 (citations omitted).

The Michigan Court of Appeals, though not specifically citing the *Strickland* standard, held

that Craig failed to satisfy either prong.  The Court of Appeals reasoned:

> Unlike the year 2002, for which defendant could present pay stubs and official records that he was living in Arkansas, defendant had no documentary proof of his whereabouts for 2001.  Instead, he presented the testimony of his sister-in-law, who indicated that defendant was in Arkansas in both May and June of 2001.  She stated that she knew this because she visited Arkansas both those months to see her ill mother-in-law.  Defendant argues that counsel was ineffective for failing to call two additional alibi witnesses who would have bolstered his sister-in-law's testimony and confirmed that defendant was in Arkansas.  Notably, defendant fails to indicate what the witnesses would have said in their testimony, and, at any rate, counsel's failure to present the two cumulative witnesses did not deprive defendant of a substantial defense.  Indeed, the sister-in-law provided alibi testimony as set forth above.  Moreover, we note that defense counsel continually attacked the victim's allegations with evidence that she had changed her story, and the victim readily conceded that she had problems remembering the exact date that the offense occurred.
>
> Additionally, although the witnesses initially appeared on defendant's witness list, defense counsel may have made a strategic decision in not calling them, including a decision based on his own assessment of their credibility.  This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight.  Without a *Ginther* hearing or other reliable proffer, there is simply no way of knowing what testimony the witnesses would have provided or what counsel's motivation was in excluding them.  There are no mistakes apparent on the record, and a reversal or remand is not warranted.

*Craig*, 2009 WL 562989, at *2 (footnote and internal citations omitted).

Here, Craig cannot establish either prong of the *Strickland* standard.  Furthermore, it is well-

established that decisions whether to call witnesses are presumed to be matters of trial strategy.

*Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  Based on the record in this case, Craig has

failed to establish a reasonable probability that the result of his trial would have been different had

trial counsel produced the testimony of the other alibi witnesses.  Moreover, the Supreme Court in

-16-

*Harrington* stated that, "[t]here is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at __, 131 S.Ct. at 790 (quoting *Yarborough v. Gentry*, 540 U.S. 1 (2003)). Counsel is not required to

be a "flawless strategist or tactician" and may not be faulted for a "reasonable miscalculation." *Id.*, at __, 131 S.Ct. at 791.

Consequently, the Court of Appeals's conclusion that Craig was not prejudiced by his attorney's failure to call additional alibi witnesses is not contrary to, or an unreasonable application of, *Strickland*. Craig is not entitled to habeas relief with respect to this claim.

### D.   Claims IV–Procedural Default and Prosecutorial-Misconduct Claim

In his fourth habeas claim, Craig asserts that he is entitled to habeas relief because the prosecutor committed misconduct when she made improper comments in her closing argument, during rebuttal, giving the impression that she had personal knowledge of Craig's guilt. Respondent argues that this claim is procedurally defaulted because, although it was raised on direct review, it was unpreserved for appeal by trial counsel's failure to contemporaneously object at trial; contemporaneous objections were not lodged in the trial court, which would serve as an adequate state-law bar. *See People v. Callon*, 256 Mich.App. 312, 662 N.W.2d 501, 513 (2003). The Michigan Court of Appeals reviewed this unpreserved claim for plain error and considered it to be without merit.

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Brooks v. Tennessee*, 626 F.3d 878, 890 (6th Cir. 2010) (citation

omitted).  The state may assert a procedural default when the last, reasoned opinion of the state courts clearly relies on a procedural bar in refusing to consider a claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If a petitioner is guilty of a procedural default in the state courts, the federal habeas court will only entertain the defaulted issue if petitioner bears the burden of showing cause and prejudice or can show actual innocence.  *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Harrington*, 562 U.S. at __, 131 S.Ct. at 787 (same).

In the present case, all of the prerequisites to a finding of procedural default are present.  The Court of Appeals expressly found that Craig's challenge to this claim had not been preserved for review because of defense counsel's failure to make a contemporaneous objection at trial.  *Craig*, 2009 WL 562989, at *2.  The fact that the court went on to review the issues under a plain-error standard does not constitute a waiver of state procedural default rules.  *See Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *see also Seymour*, 224 F.3d at 557 ("Controlling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules.").  Consequently, in the usual case, Craig would have the burden of showing cause and prejudice or actual innocence to overcome the default.

However, both the Supreme Court and the Sixth Circuit have indicated that the district court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural-default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008).  In the present case, Craig's purported constitutional claim is indisputably meritless, so analysis of the complicated procedural-default issue is unnecessary.  The Court, therefore, addresses the merit of his prosecutorial-misconduct claim.

It is well established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).   However, "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).   Prosecutorial misconduct will form the basis for a new trial and habeas relief only if the alleged misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).   "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)).   "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

When assessing such a claim, the Court first considers whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006).   If they were, the Court then must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id.* (citation omitted).

Additionally, it is inappropriate for a prosecutor to express a personal opinion as to a defendant's guilt or a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). Such statements are improper because they can "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant" thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Young*, 470 U.S. at 18-19 (citation omitted); *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008); *see also Wilson v. Bell*, 368 F. App'x 627, 633 (6th Cir. 2010) (citing cases). However, a prosecutor may argue from the facts that a witness, including a defense witness or a testifying defendant, is or is not worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000); *Cristini*, 526 F.3d at 901-02.

The Michigan Court of Appeals addressed this claim and found that the claim lacked merit and that there was no prosecutorial misconduct. The Court of Appeals explained that the prosecutor simply pointed out the specificity of the victim's testimony, because Craig argued that the victim was lying. The prosecutor then argued that the victim was worthy of belief; "hold him accountable," on the basis of the facts. Trial Tr. vol. III, 67 Sept. 6, 2007. The prosecutor did not personally vouch for the credibility of the complaining witness. Nor did she intimate that she had special knowledge that the victim was testifying truthfully. She merely stated that the victim was worthy of belief because of the facts presented.

The Court finds that decision neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor based her arguments on the

-20-

testimony and argued from the evidence presented that the victim was credible and should be believed.  Habeas relief is not warranted.

### E.  Certificate of Appealability

Before Craig may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (same).  When a federal court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

The Court concludes that reasonable jurists would not find its assessment of Craig's claims debatable or wrong.  The Court therefore declines to issue him a certificate of appealability.

However, the Court will grant Craig permission for an application for leave to proceed *in forma pauperis* on appeal, as any appeal would not be frivolous.  A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV.  CONCLUSION

The state courts's decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Craig has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, IT IS ORDERED that, Craig's petition for a writ of habeas corpus [ECF No. 1] is DENIED.

IT IS FURTHER ORDERED that, the Court declines to issue Craig a certificate of appealability but grants him permission for an application for leave to proceed *in forma pauperis* on appeal.

Dated:  November 20, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record and on
Pernicious Craig #513486, Mid-Michigan Correctional Facility,
8201 N. Croswell Road, St. Louis, MI 48880, on
November 20, 2012, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk